**SUN SHIPBUILDING & DRY DOCK COMPANY, Petitioner,**

v.

**Julius WALKER and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 78–1158.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1978.

Decided Dec. 19, 1978.

John J. Runzer, James T. Giles, Jeffery C. Hayes, Steven E. Bernstein, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for petitioner.

Paul J. Senesky, Galfand, Berger, Senesky, Lurie and March, Philadelphia, Pa., for respondent.

Carin Ann Clauss, Sol. of Labor, Cornelius S. Donoghue, Jr., Acting Associate Sol., Mary A. Sheehan, Atty., U. S. Dept. of Labor, Washington, D. C., for Director, Office of Workers' Compensation Programs.

Before ROSENN and WEIS, Circuit Judges and FISHER, District Judge.*

OPINION OF THE COURT

CLARKSON S. FISHER, District Judge.

Sun Shipbuilding & Dry Dock Co. (Sun), a self-insured employer under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (the Act), petitions for review of an order of the Benefits Review Board affirming an award of compensation to respondent Julius Walker. Sun contends that when properly applied the Act operates to bar Walker's claim. We agree.

The Act contains two limitations periods within which an employee seeking compensation must apply. The one which concerns us is contained in 33 U.S.C. 912(a).[1] Within

---

* Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

[1] "§ 912. Notice of injury or death

"(a) Notice of an injury or death in respect of which compensation is payable under this chapter shall be given within thirty days after the date of such injury or death, or thirty days after the employee or beneficiary is aware or in the exercise of reasonable diligence should have been aware of a relation-ship between the injury or death and the employment. Such notice shall be given (1) to the deputy commissioner in the compensation district in which the injury occurred, and (2) to the employer." 33 U.S.C. § 912(a).

Sun also raised as a defense below the one-year limitations period for filing claims contained in 33 U.S.C. 913(a), which was rejected by both the Administrative Law Judge and the Benefits Review Board. The issue of the applicability of § 913(a) has not been raised before the Court.

thirty days of either the date of injury,[2] or of the date on which the employee is or, in the exercise of reasonable diligence, should have been aware that the injury is work-related, the employee is bound to give written notice thereof to the employer and the deputy commissioner. Failure to do so will bar the claim,[3] unless the employee can take advantage of one of the exceptions in 33 U.S.C. 912(d).[4] Thus, if the employer, its agent in charge, or its insurance carrier had knowledge of the injury and they have not been prejudiced by lack of notice, or if it is found that a satisfactory reason exists for failure to give notice, or if the employer fails to object to lack of notice at the first hearing on the claim, the omission will be excused. The issue before the Court is whether Sun had "knowledge" of claimant's injury, so as to bring Section 912(d)(1) of the Act into play.

The pertinent facts may be recited briefly. Julius Walker worked at Sun's Chester, Pa., facility for 32 years.[5] He was a "burner" for nearly all that time, which caused him to be regularly exposed to toxic vapors in close quarters.[6] While working on December 10, 1974, Walker inhaled burned paint fumes, and the coughing and gagging which ensued forced him to leave work that day. He remained at home for four days, weak and short of breath. Claimant entered the hospital on December 14, and was treated for pneumonia.[7]

While in the hospital Walker filed an application for disability benefits pursuant to the group health insurance plan which Aetna Life & Casualty provided to Sun employees. This plan provided benefits solely for non-occupational illness or injury. The Aetna claim form which the employee prepared informed Sun that Walker was a burner suffering from a pulmonary infection. It also authorized release to Sun of all his medical records. On the same form, claimant certified that his infirmity was not work-related. Dr. Steinberg, the treating physician, signed the form and also submitted weekly certifications which allowed Walker to continue to receive non-occupational disability benefits for 26 weeks.

Claimant left the hospital December 26, 1974, but never returned to work.[8] It was not until November 25, 1975 that he was first advised by Dr. Theodos that he had

---

2. An injury within the meaning of the Act includes

"accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury . . ." 33 U.S.C. § 902(2).

3. Although not expressly provided in the statute, the premise that a claimant derelict in giving notice is, as a general rule, barred from recovery, has been accepted by the courts. E. g., Strachan Shipping Co. v. Davis, 571 F.2d 968, 969 (5th Cir. 1978); Sun Shipbuilding & Dry Dock Co. v. Bowman, 507 F.2d 146, 148 (3d Cir. 1975).

4. "(d) Failure to give such notice shall not bar any claim under this chapter (1) if the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier had knowledge of the injury or death and the deputy commissioner determines that the employer or carrier has not been prejudiced by failure to give such notice, or (2) if the deputy commissioner excuses such failure on the ground that for some satisfactory reason such notice could not be given; nor unless objection to such failure is raised before the deputy commissioner at the first hearing of a claim for compensation in respect of such injury or death." 33 U.S.C. § 912(d).

5. Walker worked for New York Ship for one 2 or 3-month period between 1942 and 1974, while briefly laid off from Sun. Otherwise he worked solely for petitioner.

6. As a burner Walker's duties primarily involved cutting steel or washing welds with an acetylene torch. During the course of this work, which was often performed in unventilated spaces in the bottoms of ships, any substance coating the surface of the steel would also burn, often emitting fumes. The burner was provided with a mask, but this so restricted breathing as to necessitate working without it much of the time.

7. Walker's first bout with pneumonia occurred in 1939, and he experienced relapses of that illness on four or five different occasions prior to December 1974. His next most recent hospitalization for pneumonia was in February 1974.

8. It is undisputed that Walker is permanently disabled.

chronic obstructive bronchitis, which, in that physician's opinion, was attributable to Walker's employment. Respondent filed a claim for compensation with the Office of Workers' Compensation Programs on February 5, 1976. Sun first received notice of this claim through the O.W.C.P. on March 10, 1976. Within ten days the employer filed an answer, first report of injury, and notice of controversion.

After a hearing the Administrative Law Judge found the conditions of Walker's employment aggravated his pre-existing lung disease, and Sun was ordered to pay him compensation for permanent total disability from December 10, 1974. In addition, penalties and interest were assessed against the employer. Sun appealed, arguing that Walker's failure to give it notice of injury within thirty days of November 25, 1975 [9] barred his recovery. Agreeing that notice was not timely, the Benefits Review Board nevertheless affirmed the Administrative Law Judge's ruling that the exception in Section 912(d)(1) of the Act excused claimant's omission. The Board reasoned that it was "common knowledge" that certain jobs carry with them a high probability of contracting various ailments; burners as a group are especially susceptible to pulmonary and respiratory disease.[10] The Board held that Sun, who knew one of its burners

had entered the hospital with pneumonia, was bound to investigate the situation. By its failure to do so, it was charged with "knowledge of the injury." [11] Sun asserts that the Board erred as a matter of law in its formulation of the standard for knowledge under Section 912(d)(1), or alternatively that the finding that Sun had knowledge of Walker's injury is unsupported by substantial evidence.[12]

To bring Section 912(d)(1) into play, the employer must know that the employee was injured and that his job was the cause. *Sun Shipbuilding & Dry Dock Co. v. Bowman,* 507 F.2d 146, 151 (3d Cir. 1975); *Strachan Shipping Co. v. Davis,* 571 F.2d 968, 972 (5th Cir. 1978); *see generally* 3 Larson, *Law of Workmen's Compensation,* § 78.31(a), at 15–43 (1975). Regardless of whether one labels the Board's decision a factual or a legal error, or a hybrid of both, the circumstances of this case do not support a finding that Sun knew that Walker's job was the cause of his injury.

In reaching their decisions, both the Administrative Law Judge and the Board ignored the crucial fact that Walker twice certified on the Aetna claim form, which was submitted to Sun in December 1974, that his injury was *not* due to occupational causes.[13] In addition, Dr. Steinberg sub-

9. This was determined to be the date on which Walker first became aware of the connection between his illness and his job. Thus both the 30-day and one-year limitations periods of Sections 912(a) and 913(a) did not begin to run until that date.

10. The fact that Sun provided its burners with masks carries no weight in the determination of whether Sun had knowledge of respondent's injury. *Bowman, supra,* note 3, 507 F.2d at 151.

11. The Board also held that Sun did not prove that it was prejudiced by the lack of notice. Because of our decision on the knowledge issue, we need not reach the question whether the Board is correct in placing that burden on the employer. *Bowman, supra,* note 3, 507 F.2d at 152.

12. Our scope of review of questions of fact is limited to ascertaining whether the Board properly applied the substantial evidence standard of 33 U.S.C. § 921(b)(3). *Director OWCP, etc.*

*v. Universal Terminal & Stevedoring Corp.,* 575 F.2d 452, 454 (3d Cir. 1978); *St. Louis Shipping v. Director, OWCP,* 551 F.2d 1119, 1122 (8th Cir. 1977); *Matter of District of Columbia Workers' Compensation Act,* 180 U.S.App.D.C. 216, 222, 554 F.2d 1075, 1081 (1976), *cert. den.* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976). We exercise plenary *de novo* review, however, on questions of law. *Aetna Life Insurance Co. v. Harris,* 578 F.2d 52, 54 (3d Cir. 1978).

13. It appears Walker made this representation in reliance on erroneous medical advise and not with an intent to mislead Sun. Nevertheless, many of the cases cited by respondents in support of a "should have known" test differ in that one important respect; namely, the facts which justified the inference of knowledge were not contradicted by the employee's representations as to the injury's non-occupational origins. *E. g., Duluth, M & I. R. Co. v. U. S. Dept. of Labor,* 553 F.2d 1144, 1148 (8th Cir. 1977); *Butler v. District Parking Management Co.,* 124 U.S.App.D.C. 195, 197, 363 F.2d 682,

mitted weekly certifications to Sun for the twenty-six-week period during which Walker received Aetna plan benefits. We refuse to impose upon an employer the duty to conduct an inquest into the accuracy of a physician's diagnosis or an employee's certification. Whatever suspicions Sun may have had regarding the occupational origins of claimant's injury were laid to rest by the representations to the contrary on the Aetna claim form. The causal relationship between Walker's job and his injury could not have been apparent to a reasonable employer at any time prior to receipt of the notice of claim on March 10, 1976, one hundred six days after claimant became aware that his malady was work-related. *See Davis,* 571 F.2d at 974; *Good Impressions, Inc. v. Britton,* 169 F.Supp. 866, 870 (D.D.C.1958); 3 Larson, *supra,* § 78.31(a), at 15–39–45. According to our reading of Section 912(d)(1), Sun did not have knowledge of Walker's injury so as to excuse his tardy notice. It is not necessary to decide at this time whether under certain circumstances an employer may have a duty to investigate a potential compensation claim, at the risk of being charged with such knowledge.

Because of the result reached through his application of Section 912(d)(1), the Administrative Law Judge did not inquire into possible reasons which would excuse claimant's late notification pursuant to Section 912(d)(2). In order to fully effectuate the beneficent purposes of the Act, we reverse and the case will be remanded in order that the claimant may be permitted an opportunity to offer an excuse, if any, for his neglect.[14] Each party shall bear his own costs.

684 (1966); *Travelers Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir. 1955); *Todd Shipyards Corp. v. Landy,* 239 F.Supp. 679, 680 (N.D.Cal. 1965); *Leyden v. Capitol Reclamation Corp.,* 2 BRBS 24, 30 (1975), *aff'd mem.* 178 U.S.App. D.C. 409, 547 F.2d 706 (1977). Although *Voris v. Eickel,* 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953) may be read as endorsing a "should have known" test in determining whether an

employer knows of the occurrence of an injury which is unquestionably caused by one's job, it does not address the work-relatedness prong of the knowledge requirement.

**14.** This result is consistent with *Bartges v. Woodworth,* 147 U.S.App.D.C. 51, 53, 452 F.2d 1383, 1385 (1971).